TAYLOR v. IOWA PARK GIN CO. et al.
(No. 7473.)

(Court of Civil Appeals of Texas. Galveston. Dec. 20, 1917.)

1. LIBEL AND SLANDER ⟨key⟩38(3)—"PRIVILEGED PUBLICATION"—PLEADINGS IN CIVIL ACTIONS.

Pleadings in civil actions are "privileged publications" and do not support action for libel.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Privileged Publication.]

2. STATUTES ⟨key⟩236—CONSTRUCTION—REMEDIAL STATUTES.

Remedial statutes will be liberally construed to accomplish the legislative purpose, especially as Rev. St. 1911, Final Title, § 3, expressly so provides.

3. LIBEL AND SLANDER ⟨key⟩38(3)—DEFENSE — STATUTES—REVISION.

Although Acts 27th Leg. c. 26, defining "libel," giving newspapers certain defenses, and preserving existing defenses, was incorporated in Rev. St. 1911 without the phrase about existing defenses, such revision did not destroy the previously existing defense that civil pleadings are privileged.

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Suit by Eustace Taylor against the Iowa Park Gin Company and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Mart H. Royston, of Galveston, for appellant. Marsene Johnson, of Galveston, and Carrigan, Montgomery & Britain and T. R. Boone, all of Wichita Falls, for appellees.

LANE, J. This suit was instituted by appellant, Eustace Taylor, against the Iowa Park Gin Company, a corporation, and H. B. Hines, C. H. Clark, and R. L. Fowlkes, to recover damages in the sum of $25,000 for libel, alleged to have been published by defendants of and concerning him.

Appellant, as plaintiff in the lower court, alleges in substance that defendants, and each of them, for the purpose and with the intent to injure him, did falsely, maliciously, wantonly, and recklessly publish and circulate in Galveston county, Tex., a malicious libel of and concerning him, in this, to wit, that in a certain civil suit pending in the district court of said Galveston county, wherein the Iowa Park Gin Company sued W. L. Moody & Co., a firm composed of W. L. Moody, Sr., and W. L. Moody, Jr., for damages by reason of an alleged fraudulent sale of 1,603 bales of cotton shipped by the Iowa Park Gin Company to W. L. Moody & Co. for sale for a commission, said Iowa Park Gin Company filed its petition and therein, among other things, in substance alleged that the defendants Moody kept and retained the possession of said cotton for the Iowa Park Gin Company until the 7th day of August, 1913, at which time the Moodys, without any direction or authority from the Iowa Park Gin Company, and over its protest, sold or pretended to sell said cotton at and for the price of 11½ cents per pound, and over the protest of the Iowa Park Gin Company delivered the same to the purchaser; that the Iowa Park Gin Company was informed and believes that said cotton was sold by said Moodys to one Eustace Taylor (plaintiff in the present suit) at and for 11½ cents per pound, and said sale was made on the 7th day of August, 1913; that on said day on which the cotton was sold, and on the day before said sale, middling cotton was quoted at Galveston, Tex., and was at that time reasonably worth on the market at Galveston, Tex., 11$^{13}$/₁₆ cents per pound, and the cotton of the Iowa Park Gin Company was on the day the same was sold and on the day previous to said sale worth at least the sum of 11$^{13}$/₁₆ cents per pound; that prior to such sale the agent of the Iowa Park Gin Company informed the said W. L. Moody & Co., the defendants in said suit, that there were several cotton buyers in Galveston, and among others Harris, Erbe & Co., Inmans-Nelms & Co., Robert M. Harris & Co., who had expressed a desire to bid upon said cotton and informed the defendants that he had promised them an opportunity to bid on said cotton when the same was offered for sale.

Notwithstanding the foregoing facts, said defendants on said 7th day of August, 1913, sold said cotton, as the said Iowa Park Gin Company is informed and believes, to one Eustace Taylor without giving any of the parties above named, or any other cotton buyers in Galveston, an opportunity to bid upon same, and sold said cotton, not upon its merits, but sold the same "hog round," as above alleged, and without soliciting or attempting to secure bids or offers of said cotton from any other person except the said Eustace Taylor.

The Iowa Park Gin Company further alleged upon information and belief that said cotton was sold to Eustace Taylor pursuant to an agreement and conspiracy entered into between the said W. L. Moody & Co. and the said Eustace Taylor for the fraudulent purpose of depriving the plaintiff Iowa Park Gin Company of the difference between the price for which said cotton was sold and the fair value thereof, and that in making said sale to Eustace Taylor the said defendants did not act in good faith and did not act for the best interest of the Iowa Park Gin Company, but acted in their own interest and in the interest of said Eustace Taylor.

In other words, the allegations made in the petition in said suit are made the basis for plaintiff's suit in this cause. It being further alleged by plaintiff that defendants H. B. Hines, C. H. Clark, and R. L. Fowlkes conspired and confederated with the Iowa Park Gin Company in its suit against the Moodys and procured and caused the allegations complained of to be made.

All the defendants specially excepted to plaintiff's petition as follows:

"Said defendants specially except to plaintiff's petition, and say the same is wholly insufficient because it appears from said petition that the alleged libel which is the basis of the plaintiff's suit was contained in the petition filed by the Iowa Park Gin Company against W. L. Moody in cause No. 30487 in the district court of Galveston county, Tex., and therefore said matter complained of as libelous is absolutely privileged and cannot be the basis of an action for damages, and of this the defendants pray the judgment of the court."

The court sustained said exception, and upon the refusal of plaintiff to amend his pleadings the cause was by the court dismissed.

By the first assignment it is insisted that the trial court erred in holding that the allegations of the petition made the basis of appellant's cause of action were privileged and could not be the basis for a suit for libel, because the same was contained in a pleading filed in a civil suit pending in a court of competent jurisdiction, for the reason: (1) That appellant was not a party to the suit in which said petition was filed, and (2) because under the law of the state the pleadings in a cause pending in a court of competent jurisdiction are not privileged, and may constitute the basis for a suit for libel.

The contention of appellant is that prior to 1901 there was no statute in this state defining libel, and that prior to that time the common-law definition of "libel" and common-law defenses obtained. That the Twenty-Seventh Legislature of 1901 passed an act (Acts 27th Legislature, p. 30), which, after defining libel, among other things, provides for certain defenses as follows:

"Sec. 3. The publication of the following matters by any newspaper or periodical, as defined in section 1, shall be deemed privileged, and shall not be made the basis of any action for libel without proof of actual malice: (1) A fair, true and impartial account of the proceedings in a court of justice, unless the court prohibits the publication of the same, when in the judgment of the court the ends of justice demand that the same should not be published, and the court so orders; or any other official proceedings authorized by law in the administration of the law. (2) A fair, true and impartial account of all executive and legislative proceedings that are made a matter of record, including reports of legislative committees, and of any debate in the Legislature and in its committees. (3) A fair, true and impartial account of public meetings, organized and conducted for public purposes only. (4) A reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information.

"Sec. 4. Nothing in this act shall be construed to amend or repeal any penal law on the subject of libel, nor to take away any existing defense to a civil action for libel, nor shall this act affect any suits now pending, or that may hereafter be brought upon a cause of action arising prior to the taking effect of this act."

That this act remained in force from its passage in March, 1901, until the adoption of the Revised Statutes of 1911. That in that year the codifiers, in their work of revision, carried forward and made a part of the Revised Statutes of 1911 (article 5598), only so much of section 4 of said act which reads as follows:

"Nothing in this chapter shall be construed to amend or repeal any penal law on the subject of libel."

That it was clearly the purpose and intention of the codifiers who arranged the Civil Code of 1911, and the Legislature of 1911 which adopted the same, to omit and repeal so much of section 4 of the act of 1901, supra, as was not carried forward and embraced in the Revised Statutes, and that since the provisions of the Revised Statutes took effect in March, 1911, the only defenses which may be pleaded to an alleged libel are those provided by the Acts of the 27th Legislature of 1901, and which were carried into the Revised Statutes of 1911. It is his contention that while newspapers and periodicals are privileged to publish and circulate and send broadcast, without malice, any fair and impartial account of proceedings in a court of justice, or any other official proceedings authorized by law in the administration of the law, etc., regardless of the effect such publication may have upon the character, feelings, or property of another, those who institute such proceedings in said courts of justice, or who institute any other official proceedings authorized by law in the administration of the law, are not privileged to allege in such proceedings matter which may injuriously affect the person or property of another, regardless of whether such allegations were pertinent and relative to the issues involved or not.

[1-3] Such contention is wholly untenable. If such contention is the law, then one who files a civil suit in a court of justice against another to recover a wrong which he honestly believes he has suffered at the hand of the person sued does so at the risk of being

sued for libel based upon the allegations of his petition. The law recognizes that the courts could not be freely resorted to if the allegations of a petition could be regarded as actionable. If it could be so, then in the end it would only be the powerful and influential, the popular and well beloved, who could resort to courts. There would be no chance for the friendless one there. If he had property subject to execution, the effort to get one injury redressed by suit would simply result in his suffering more in another action wherein he would be defendant. Such changes could take place in the situation of the parties as that suit after suit would alternate. It is folly to say to citizens: You are free to and must resort to the courts to settle your disputes, unless you can otherwise civilly settle same, but if we reach the conclusion, whether correctly so or not, that your suit was prosecuted with malice and without probable cause, woe unto you, for such would destroy the freedom of the citizen to a resort to the courts of his country for redress of a real or fancied wrong.

"Every one is liable to be harassed and injured in his property and feelings by unfounded suits, but this is not an injury for which he can have legal redress." Smith v. Adams, 27 Tex. 30; 26 Cyc. p. 15.

If this contention of appellant can be sustained, then what is to prevent the parties Hines, Clark, and Fowlkes, sued by Taylor in this cause, from instituting suit for libel against him, based upon his allegation that they confederated with the Iowa Park Gin Company and caused it to make the allegations in its petition complained of? What is there to prevent one suit following the other interminably; each succeeding suit being based upon the allegations of the former or preceding suit?

If such contention can be sustained, every litigant in a case of fraud, either plaintiff or defendant, who in his petition or answer charges the opposite party with a fraudulent conspiracy or collusion, may be sued for libel based upon the petition or answer, or any litigant, who in a divorce suit charges that the other party to the suit was guilty of adultery with some person not a party to the suit, may be sued not only by the opposite party, but a suit by the third party, not a party to the suit, may be maintained, regardless of whether the charge was pertinent and relevant or not.

In Ruling Case Law, vol. 17, p. 335, the rule is stated to be that statements made by a party in his pleadings in judicial proceedings are absolutely privileged and can in no case give rise to an action for defamation; that the prevailing rule in the United States is that such statements are privileged when pertinent and relevant to the subject under inquiry; that the question of the relevancy or pertinency of matters contained in the pleadings, when in issue, is never left to the jury, but is a question of law for the court.

As to the degree of relevancy or pertinency necessary to make alleged defamatory matter privileged, the courts favor a liberal rule. The matter to which the privilege does not extend must be so palpably wanting in relation to the subject-matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety. In order that matter alleged in a pleading may be privileged, it need not be in every case material to the issues presented by the pleadings. It must, however, be legitimately related thereto, or so pertinent to the subject of the controversy that it may become the subject of inquiry in the course of the trial. The fact that the person alleged to have been defamed in the pleadings is not a party to the proceedings has been held not to detract from the privileged character of the publication. The theory of privilege in this connection has been defended on the ground that the pleadings are addressed to the court alone and to no other readers.

To more clearly state the exact contention of appellant than we have done heretofore, we repeat his contention, as follows: He contends that since the Act of the 27th Legislature of 1901 covered the entire subject of libel as applied to civil suits, regardless of what may have been the rules of the common law and decisions of the courts on the subject prior to the adoption of the Revised Civil Statutes of 1911, it still covers the entire subject of libel in such suits, and, as by the adoption of said Civil Code that part of said act of 1901 which provided that nothing in said act should be construed to take away defenses to civil actions for libel which existed theretofore was dropped from the law and thereby repealed, there are now no defenses to civil actions for libel, except those specially mentioned in subsections 1, 2, 3, and 4 of section 3 of said Act of 1911, and as a sequence the fact that the basis for plaintiff's suit is the allegations in a petition filed in a civil suit pending in court, though pertinent and relevant to the matters in controversy, is no longer a privileged matter, and therefore the court erred in sustaining defendants' special exceptions and in dismissing the plaintiff's suit.

We have already shown that unquestionably, prior to the adoption of the Revised Civil Statutes of 1911, from which a portion of section 4 of the Act of the 27th Legislature of 1901 was omitted, pleadings filed in civil suits were privileged and were not publications upon which an action for libel would lie.

It is apparent from what we have already said that we think appellant's contention unsound.

The Act of the 27th Legislature of 1901, supra, shows upon its face that it was enacted for the purpose of defining libel, and of remedying what the Legislature must have deemed an evil. It is a matter of common

knowledge that for many years prior to the enactment of said law publishers of newspapers and periodicals were frequently made defendants in suits for libel for publishing accounts of matters thereafter by said act declared to be privileged. It was that supposed evil that the legislation here under consideration was intended to remedy. It cannot reasonably be supposed that the legislators who adopted the Revised Civil Statutes of 1911 did, or intended to, so change the effect of the act of 1901 as that such law would result in such absurd consequences as has been hereinbefore pointed out; for the evil which would result from such change would be greater than that sought to be remedied by the passage of the original act.

The rule is universal that in construing a remedial statute courts will consider the evil intended to be remedied, and give to the language of the statute a liberal construction in order to accomplish the legislative purpose, and we think such liberal construction should extend to changes made in such remedial statutes, to the end that evils may be lessened rather than multiplied, as would be the result if the contention of appellant is sustained.

Another reason exists for a liberal construction of the statute as it now stands in the Revised Civil Statutes, and that is a legislative declaration contained in section 3 of the final title of the Revised Civil Statutes of 1911, to the effect that the provisions of said statutes shall be liberally construed with a view to effect their object and to promote justice.

We are of opinion that the omission of the codifiers to carry forward and embrace subsection 4 of section 3 of the Acts of 1910, supra, in the Revised Civil Statutes, does not signify that they intended to take away all defenses to civil actions for libel which existed under the common law or those existing under the act of 1901, except those specially mentioned therein; but we think it obvious that their conclusion was that by the act of 1901 the Legislature passing such act only intended to define and make clear what matters could be published by newspapers and periodicals without being liable in actions for libel, and, so concluding, neither they nor the Legislature which adopted the Revised Statutes of 1911 saw the necessity of carrying into the statute a declaration that nothing in that act should be construed to take away existing defenses to civil actions for libel.

It is true that in the case of Walker v. San Antonio Light Co., 30 Tex. Civ. App. 165, 70 S. W. 557, and other cases cited by appellant, the court held that it was the manifest purpose of the Legislature in passing the act of the 27th Legislature of 1901, now articles 5595 to 5598, inclusive, of the Revised Civil Statutes, to cover the entire subject of libel as applied to civil suits, regardless of what may have

been the rules of common law and the decisions of the courts on the subject, and it is not our purpose to take issue with such holding, as by section 4 of said act it is specially provided that nothing in that act shall be construed to take away defenses to a civil action for libel which existed prior to the taking effect of such act. But it by no means follows that the court's rendering those decisions would hold, if the question was presented to them, that by the act of 1901 as it now stands in the Revised Civil Statutes of 1911, all defenses to civil actions for libel, which existed before the adoption of said statute, are taken away, except those specially mentioned therein. The questions decided by the cases relate solely to what matter could be published by newspapers and periodicals as privileged matter, and with this question alone before them they held, in substance, that the privileged matter set out in the statute was the only matter privileged to be published by such newspapers and periodicals.

It is apparent from what we have said that we have reached the conclusion that the trial court correctly sustained appellees' special exception to appellant's petition. Having reached such conclusion, the judgment of the trial court is affirmed.

Affirmed.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes